

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 31, 2022

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

      Re:    <u>United States</u> v. <u>Nathaniel Croskey</u>, S1 20 Cr. 631 (AKH)

Dear Judge Hellerstein:

      After six felony drug convictions in the New York State courts, and while on parole, defendant Nathaniel Croskey sold crack cocaine for a crew in Harlem.  Worse, he kept a gun, firing it in the air of a residential neighborhood in the middle of the night.  A career offender in fact and in law, Croskey now awaits sentencing for conspiracy to distribute and possess with intent to distribute cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  The Government agrees with the Probation Office that the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") is 188 to 235 months' imprisonment.  For the reasons set forth below, a sentence within this range is necessary to serve the purposes of sentencing.

**I.**     **Background**

      Croskey, age 42, has spent the last 25 years committing serious and, at times, violent crimes.  At age 17, he and others robbed a victim at gunpoint, for which Croskey was adjudicated a youthful offender.  (PSR ¶ 48.)[1]  While his robbery case was pending, however, Croskey sold drugs to an undercover officer, earning his first felony narcotics conviction.  (PSR ¶ 49.)  He was paroled, and less than one month later, arrested again for selling drugs to an undercover officer.  (PSR ¶ 50.)  That resulted in his second felony narcotics conviction.  (PSR ¶ 50.)  While awaiting sentencing in that narcotics case, Croskey was arrested — yet again — for drugs.  (PSR ¶ 51.)  That resulted in Croskey's third felony narcotics conviction.  (PSR ¶ 51.)

      Croskey's spate did not end there.  Indeed, it did not even end while he was in prison, where he was charged and convicted for promoting prison contraband.  (PSR ¶ 52.)  He was paroled in 2004 and, less than two years later, was arrested and re-imprisoned for possessing crack and marijuana.  (PSR ¶ 52–53.)  In 2008, Croskey was re-paroled; and in 2009, just a year later, he was arrested again for selling drugs.  (PSR ¶¶ 52, 54.)  In 2011, while that narcotics case was

---

[1] "PSR" refers to the Presentence Investigation Report revised May 24, 2022.

The Honorable Alvin K. Hellerstein  Page 2
October 31, 2022

still pending, Croskey was arrested — yet again — for drugs. (PSR ¶ 55.) These 2009 and 2011 arrests resulted in his fourth and fifth felony narcotics convictions. (PSR ¶ 54–55.)

Croskey was paroled in 2013. (PSR ¶ 55.) In 2017, he was caught shoplifting and told the arresting officer, "I will cut you," while motioning in his pocket as if he had a knife. (PSR ¶ 56.) Officers found on him a large quantity of cocaine, crack, and heroin. (PSR ¶ 56.) For this crime, Croskey received his sixth felony narcotics conviction. (PSR ¶ 56.) He was sentenced to three years' imprisonment and was paroled in June 2019. (PSR ¶ 56.)

**II.   Offense Conduct**

In May 2020, while on parole, Croskey delivered crack cocaine on behalf of co-defendant Kenneth Spearman to a law enforcement confidential source ("CS-1"). (PSR ¶ 21.) In August 2020, Croskey also sold crack directly to CS-1. (PSR ¶ 21.) Unbeknownst to Croskey, CS-1 was working for the New York City Police Department ("NYPD") and United States Department of Homeland Security, Homeland Security Investigations ("HSI") on a year-plus narcotics investigation. (PSR ¶ 21.) Through a wide range of investigative tools — including controlled purchases, physical surveillance, premises searches, car trackers, and Title III intercepts of two phones, including Spearman's phone — the investigation revealed a drug trafficking organization (the "Spearman DTO"), led by Spearman, that sold narcotics for years in a three-block area of Seventh Avenue, from approximately 120th Street to 123rd Street, in Harlem. (PSR ¶ 18.)

Fifteen defendants were eventually charged in the case. Unlike most of his co-defendants, however, Croskey had a gun. On August 15, 2020, at approximately 2:50 a.m., Croskey fired the gun on of the corner of Seventh Avenue and 120th Street (within the territory of the Spearman DTO). Croskey fired the gun in the air, in a residential neighborhood, for no apparent purpose. A surveillance still of the Croskey firing the gun (circled in red) follows below.



The Honorable Alvin K. Hellerstein											Page 3
October 31, 2022

Croskey was arrested on September 2, 2020.  On his person were 21 capsules of crack cocaine, 58 capsules of cocaine, and at least one glassine containing heroin and fentanyl.  (PSR ¶ 23.)

### III.     Plea and Applicable Guidelines Range

On January 7, 2021, a grand jury returned Superseding Indictment S1 20 Cr. 631 charging Croskey and 14 co-defendants with conspiracy to distribute and possess with intent to distribute 280 grams and more of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  Croskey was also charged with possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1).[2]

On March 3 and March 9, 2022, Croskey pleaded guilty, pursuant to a plea agreement, to the lesser-included offense of conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  (ECF Doc. No. 200.)  Because the plea agreement did not require him to plead guilty to the felon-in-possession count, Croskey avoided the 15-year mandatory minimum otherwise applicable, in the Government's view, under the Armed Career Criminal Act, 18 U.S.C. § 924(e).[3]  On March 10, 2022, this Court accepted Croskey's plea.  (ECF Doc. No. 201.)

In their plea agreement, the parties stipulated to a conspiracy drug weight of at least 840 grams but less than 2.8 kilograms of crack cocaine, which yields a base offense level of 32.  *See* U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(4).  Because Croskey is a career offender, however, his offense level increases to 34.  *See* U.S.S.G. § 4B1.1(b)(2).  After accounting for acceptance of responsibility, Croskey's total offense level is 31.  The parties further agreed that Croskey has 14 criminal history points, which corresponds to a criminal history category of VI.  This yields a Guidelines range of 188 to 235 months' imprisonment.  The Probation Office concurs in these calculations.  (PSR ¶ 60.)

The Government agrees with the Probation Office that the defendant's three prior convictions for criminal possession of a controlled substance in the third degree, in violation of New York Penal Law § 220.16(1), make him a career offender.  (PSR ¶ 62.)  In calculating the Guidelines for co-defendant Isaiah Ledgister, this Court held that Ledgister's prior convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39, made him a career offender.  (ECF Doc. No. 368, at 9 ("I hold that these offenses are narcotics offenses and qualify under the career offender statute, which would put him in criminal history category VI.  But I will punish him as if he were in criminal history category IV because I feel that the career offender escalation is inappropriate for the crimes that Mr. Ledgister committed, and generally in accordance with what would be just punishment.")

---

[2] One co-defendant, Cameron Francis, was also charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and brandishing a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2.

[3] In the plea agreement, Croskey stipulated to the fact of the shooting and acknowledged that the Court may consider it at sentencing under 18 U.S.C. § 3553(a).  (PSR ¶ 9 n.1.)

The Court correctly ruled that Ledgister was a career offender, and the same is true for Croskey. In *United States v. Sadler*, 765 F. App'x 627, 630 (2d Cir. 2019), the Second Circuit held that criminal *sale* of a controlled substance in the third degree is a "controlled substance offense" within the meaning of the career offender Guidelines. The Court specifically distinguished *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018) on the ground that "narcotic drug," which is used in the statute governing criminal sale of a controlled substance in the third degree, is defined more narrowly under New York law than the term "controlled substance" considered in *Townsend*. 765 F. App'x at 630–31. The statute at issue here, criminal *possession* of a controlled substance in the third degree, uses the same term "narcotic drug." *See* New York Penal Law § 220.16(1). Although the issue of whether *Townsend* should be extended to a "narcotic drug" is again before the Second Circuit, *see, e.g.*, *United States v. Johnson*, No. 19-4071, the current weight of Second Circuit authority supports application of the career offender Guidelines to criminal possession of a controlled substance in the third degree.

The Government notes that because Croskey is a career offender, his Guidelines range is unaffected by the disparity between the crack and powder cocaine Guidelines. This is because Croskey's base offense level is determined by the career offender guidelines, not the drug weight. Only in a hypothetical world where Croskey was <u>not</u> a career offender would he benefit from treating his crack cocaine as powder. In that event, Croskey's base offense level would be 24 (reflecting application of the powder cocaine Guidelines to at least 840 grams of drug weight), his total offense level would be 21, his criminal history category would be VI, and his resulting Guidelines range would be 77 to 96 months' imprisonment. *See* U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(8), ch. 5, pt. A.

**IV.   Discussion**

    **A.  Applicable Law**

Although the Supreme Court held in *United States* v. *Booker* that the Guidelines are no longer mandatory, the Court instructed that district courts must still "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

      (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)    to afford adequate deterrence to criminal conduct;

      (C)    to protect the public from further crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.  A Guidelines Sentence Is Appropriate

The Government submits that a sentence within the Guidelines range of 188 to 235 months' imprisonment is sufficient, but not greater than necessary, to serve the purposes of sentencing in this case. After more than two decades of crime, including six felony narcotics convictions, and while on parole, Croskey delivered drugs for Spearman. Three months later, he fired a gun in a residential neighborhood in the middle of the night. A sentence within the Guidelines range is necessary to reflect the seriousness of Croskey's offense, to account for his extensive criminal history, to promote respect for the law, and to protect the public from his future crimes.

As the Court is aware, the Spearman DTO was a drug crew that ran a three-block area of Harlem with impunity. The crew sold crack cocaine in the street, passed money to Spearman, and sometimes used violence against rivals or other members of the DTO. Croskey was a street dealer for the Spearman DTO who also made personal deliveries for Spearman. His role, though not indispensable, was important. By selling and delivering drugs for Spearman, Croskey contributed to an enormous operation that transformed a residential area into an open-area drug market.

For most of Croskey's co-defendants, it is their role and duration within the Spearman DTO that marks the seriousness of their offense. But for Croskey, his participation in the Spearman DTO is overshadowed by an even more serious crime: He fired a gun. As a felon, Croskey had no right to carry a gun; in the middle of the night, in a residential neighborhood, he had no reason to fire it. Croskey easily could have killed someone in the street or in their home. It is only by good fortune that he did not.

And this is not Croskey's first act. It is not even his fifth. Over the last 25 years, Croskey has accumulated seven felony convictions — six for narcotics, one for prison contraband — plus a youthful offender adjudication for robbery. On six prior occasions, he committed a new crime while in some phase of a criminal case (pending trial, pending sentencing, in prison, or on parole). (PSR ¶¶ 49, 50, 51, 52, 53, 55.) And he was on parole when he sold for the Spearman DTO and fired a gun in this case. Croskey is a career offender for whom the designation is entire appropriate, in fact and in law. Crime is his career.

For other co-defendants in this case, most recently Ledgister, the Government has recommended a below-Guidelines sentence in recognition of the defendant's youth and potential for rehabilitation. Croskey is different. Even more than the length and severity of his criminal history, Croskey's utter disregard for the judicial system — as displayed, again and again, when

The Honorable Alvin K. Hellerstein                                                                                               Page 6
October 31, 2022

he committed new crimes while awaiting trial or pending sentencing or in prison or on parole, as he was in this case — leaves no reason to think that he has turned a corner. If anything, Croskey's criminal behavior has *escalated* over the years, culminating in his firing a gun on a public street. This vividly illustrates the need to protect the public from Croskey's future crimes.

**IV.     Conclusion**

For all the foregoing reasons, a sentence within the Guidelines range of 188 to 235 months' imprisonment is necessary to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Alexander Li
Ryan Finkel
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-2265/-6612/-2345

cc:     David S. Greenfield, Esq. (by *ECF*)
         James E. Neuman, Esq. (by *ECF*)